IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2017 JUN -5 P 1:28

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| IRISH JENKINS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL ACTION NO: 2:17-cv-364 |
| v. | ) |
| | ) |
| KOCH FOODS, INC.; KOCH FOODS | ) PLAINTIFF DEMANDS |
| OF ALABAMA, LLC; DAVID | ) TRIAL BY STRUCK JURY |
| BIRCHFIELD; and MELISSA | ) |
| MCDICKINSON, | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

## JURISDICTION AND VENUE

1.     This Complaint seeks legal and equitable relief to redress Defendants'

violations of Plaintiff's rights secured by:

      a.     Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e, *et seq.*, as amended;

      b.     Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended; and

      c.     The laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

      a.     28 U.S.C. §§ 1331 and 1343; and

      b.     42 U.S.C. § 2000e-5(f)(3).

1

3.     Plaintiff's claims arising under the laws of the State of Alabama are properly before this Court pursuant to 28 U.S.C. § 1367.

## PARTIES

4.     Plaintiff Irish Jenkins (hereinafter "Jenkins" or "Plaintiff") is an African-American male resident of Butler County, Alabama who is over the age of 19.  Jenkins was employed by Defendant Koch Foods, Inc. and Koch Foods of Alabama, LLC in Montgomery County, Alabama.

5.     Defendant Koch Foods of Alabama, LLC ("Koch-Ala") is a corporation that owns and operates facilities in Montgomery, Alabama, where it processes and packages chicken products for sale and ultimate consumption by the public.

6.     The Koch-Ala complex consists of a Debone Plant, Kill Plant, Hatchery, and Shipping Facility.

7.     Defendant Koch Foods, Inc. ("Koch Foods") is a corporation that owns and operates facilities where it processes and packages chicken products at various locations around the country and allows or licenses the name of "Koch Foods" to similar businesses, including Koch-Ala in Montgomery County,

2

Alabama.

8.     During the time that Jenkins worked at Defendant Koch-Ala's Montgomery facility, Defendant David Birchfield (hereinafter "Birchfield") was the Complex Human Resources Manager for all of Koch Foods and Koch-Ala's Montgomery facilities.

9.     Birchfield maintained an office at the Koch-Ala Kill Plant.

10.     During the time that Jenkins worked at Defendant Koch-Ala's Montgomery facility, Defendant Melissa McDickinson (hereinafter "McDickinson") was the Human Resources Manager for the Debone Plant owned and operated by Koch Foods and Koch-Ala.

11.     The Debone Plant of Koch-Ala is across the street from the Kill Plant.

12.     McDickinson worked under the direct supervision of Birchfield.

13.     Birchfield worked under the direct supervision of Bobby Elrod ("Elrod"), the Director of Human Resources for Koch Foods.

14.     Defendants Koch Foods and Koch-Ala employ at least fifteen (15) persons within the meaning of Title VII, 42 U.S.C. § 2000e-(b).

**VENUE**

15.     Venue lies in the Middle District of Alabama.  28 U.S.C. § 1391.

3

## NATURE OF ACTION

16.    Plaintiff Jenkins alleges that Defendants engaged in intentional unlawful employment practices and other acts of intentional discrimination; harassment; retaliation; assault and battery; invasion of privacy; negligent/wanton hiring, training, supervision and retention; and intentional infliction of emotional distress. This action seeks to redress these grievances resulting from the actions of Defendants, their officers, agents, servants, and employees committed with respect to Jenkins' employment and otherwise; and for a permanent injunction restraining Defendants from discriminating against Jenkins and others similarly situated on account of race, sex, and retaliation.

17.    Jenkins also seeks make whole relief including reinstatement, back pay, front pay, compensatory damages, and punitive damages.    Additionally, Jenkins seeks costs, interest, and attorneys' fees.

## ADMINISTRATIVE PROCEDURES

18.    On June 17, 2016, within 180 days of learning of the acts of discrimination of which he complains, Jenkins filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex and race discrimination and harassment, sexual harassment, and retaliation. **(Attached**

4

**hereto as Exhibit A).**

19.     The EEOC issued Jenkins a Notice of Right to Sue on March 7, 2017 **(Attached hereto as Exhibit B)** that was received on March 10, 2017.

20.     Jenkins has met all prerequisites to filing this lawsuit.

## STATEMENT OF FACTS

21.     Jenkins is an African-American male.

22.     Jenkins was employed by Defendants Koch Foods and Koch-Ala as an Inventory Clerk from 2013 until March 25, 2016, when Defendants terminated his employment.

23.     In or about October 2015, Defendant Melissa McDickinson (Caucasian), Human Resources Manager for Koch Foods and Koch-Ala, verbally expressed her request to engage in a sexual relationship with Jenkins, an hourly employee of Koch Foods and Koch-Ala.

24.     McDickinson sent a message through Steven Jackson ("Jackson") (African-American), Union Representative at the Debone Plant, that she was attracted to Jenkins and wanted to hang out.

25.     At McDickinson's request, Jackson invited Jenkins to socialize with him, McDickinson, and McDickinson's sister-in-law, Rebecca Milam, at a local

bar.

26.     Ms. Milam is employed by Koch Foods and works at the Debone plant in the Human Resources Department.

27.     While at the bar, McDickinson flirted with Jenkins and told him she was sexually attracted to him and was interested in pursuing a sexual relationship.

28.     McDickinson told Jenkins she had a sexual preference for African-American men.

29.     At first, Jenkins engaged in a consensual relationship with McDickinson.

30.     Jenkins and McDickinson spoke on the phone frequently.

31.     McDickinson shared with Jenkins that David Birchfield, the Complex Human Resources Manager for Koch Foods and Koch-Ala, had recruited her to work for Koch Foods after they had met during military service.

32.     McDickinson shared that Birchfield had bought her a car.  The license plate for the car was a combination of their names.

33.     McDickinson also shared that she had Birchfield's name tattooed on her wrist and showed the tattoo to Jenkins.

34.     McDickinson often told Jenkins that, as long as Jenkins remained in a

6

sexual relationship with her, he could do whatever he wanted at work and she would insure that he was "bulletproof" from any discipline.

35. Jenkins was engaged to be married to another woman who worked at Koch Foods as an hourly worker.

36. McDickinson told Jenkins that his fiancé would also be "bulletproof" at work, as long as Jenkins continued to have a sex with McDickinson.

37. On one occasion, McDickinson called Jenkins into her office while he was working.

38. When Jenkins arrived, McDickinson attempted to perform oral sex on him.

39. Jenkins told McDickinson that he was uncomfortable.

40. McDickinson reminded Jenkins that if he was "in" with her, he would be safe at work and never lose his job.

41. On other occasions, McDickinson would walk to Jenkins' department and tell him she needed assistance finding paperwork in "the cage," an area where files are kept at the plant.

42. McDickinson would walk Jenkins into the cage and begin performing oral sex on him.

43.     On some occasions, McDickinson asked Jenkins to have sexual intercourse with her while at work.

44.     Jenkins refused McDickinson's requests.

45.     At times, McDickinson would call Steven Jackson and send him messages for Jenkins whenever she could not locate Jenkins at his work station.

46.     Jenkins was present when Birchfield and McDickinson discussed wanting to have group sex with a fellow co-worker, Ka'toria Gray.

47.     Birchfield and McDickinson requested that Jenkins approach Ms. Gray about having sex with them.

48.     Jenkins was uncomfortable about doing so and refused.

49.     Jenkins expressed his belief that the request was sexual harassment.

50.     McDickinson and Birchfield laughed at Jenkins and then asked Steven Jackson to approach Ms. Gray with their invitation for group sex.

51.     Jenkins began to notice that McDickinson and Birchfield used Jackson to recruit employees to be participants in their sexual encounters.

52.     Around November 2015, McDickinson told Jenkins that Birchfield wanted to watch Jenkins and McDickinson have sex.

53.     Jenkins was immediately uncomfortable with the request and refused

8

McDickinson's request.

54.    On multiple occasions, McDickinson requested that Jenkins engage in sexual intercourse with her while Birchfield watched.

55.    Jenkins refused McDickinson's requests.

56.    In December 2015, Birchfield suspended Jenkins for three (3) days for an alleged "points" violation.

57.    However, Birchfield and McDickinson brought Jenkins back to work and drastically reduced his point history.

58.    McDickinson told Jenkins upon his return that this was because he was "in" with them, and that if he "stuck with her" and consented to Birchfield's request to join them for sex, Jenkins would be "untouchable" in the workplace.

59.    Jenkins again refused McDickinson's requests.

60.    On or about December 17, 2015, Birchfield called Jenkins into a meeting and threatened him about his relationship with McDickinson.   Jenkins feared that Birchfield was setting him up for termination and was recording the conversation.   As a precaution, Jenkins secretly recorded the conversation.

61.    Birchfield pressured Jenkins into signing a statement that he had prepared, stating that Jenkins was not having a sexual relationship with

9

McDickinson.

62.    Birchfield told Jenkins during the meeting that he was sending the statement to his supervisor, Bobby Elrod, Director of Human Resources.

63.    In January 2016, McDickinson called Jenkins into her office in the Human Resources Department.

64.    When Jenkins arrived, Birchfield entered the room and closed the door.

65.    During the meeting, McDickinson asked if Jenkins had reconsidered allowing Birchfield to be present during sex with her.

66.    Jenkins told them that he was uncomfortable with their requests and refused again.

67.    On March 21, 2016, Birchfield falsely accused Jenkins of "stealing time by taking an excessive work break" and suspended him for four (4) days.

68.    Jenkins alleges that he was suspended because he repeatedly refused Birchfield's and McDickinson's sexual propositions and because he ceased his sexual relationship with McDickinson.

69.    Following Jenkins' suspension, he went to the union to complain and file a grievance.

70.     The union did not investigate Jenkins' complaint because he was not a member.

71.     Jenkins then contacted Bobby Elrod, Director of Human Resources, and complained of discrimination, harassment, and retaliation.

72.     Elrod told Jenkins that he had received other complaints about Birchfield and McDickinson.

73.     Defendants failed to discipline Birchfield or McDickinson after Jenkins complained.

74.     Defendants failed to investigate or remedy Jenkins' complaints.

75.     Elrod, having knowledge of Birchfield's and McDickinson's discrimination and harassment of employees in the workplace tolerated and condoned the unlawful conduct.

76.     While Jenkins was still employed, Birchfield advised Jenkins that Randy Davenport, the former Plant Manager, and two (2) Human Resources employees, Laura Cortez and Kathy Denton, wrote a letter to Elrod complaining of Birchfield's discrimination and harassment and of McDickinson's sexual behavior with employees.

77.     Birchfield told Jenkins that after he learned of the letter to Elrod, he

terminated Mr. Davenport and Ms. Denton.

78.     Birchfield also told Jenkins that Ms. Denton was rehired, but only after she threatened to file a lawsuit against the company and Birchfield.

79.     Defendants terminated Jenkins' employment on March 25, 2016.

80.     Jenkins learned of his termination by calling in at the end of his 4-day suspension to determine when he could return to work.

81.     When Jenkins called the Human Resources office, Rebecca Milam advised him that he was terminated.

82.     Milam had engaged in sexual relationships with McDickinson and at least two (2) other African-American hourly co-workers.

83.     Koch Foods has an anti-fraternization policy among supervisors and subordinates.

84.     To Jenkins' knowledge, neither Birchfield, McDickinson, nor Milam were ever disciplined or investigated for their sexual misconduct in violation of the policy.

12

## COUNT I

### TITLE VII SEXUAL HARASSMENT
### AGAINST KOCH FOODS, INC. AND KOCH FOODS OF ALABAMA, LLC

85.     Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

86.     Defendants, by and through Human Resources Manager McDickinson and Complex Human Resources Manager Birchfield and those acting in concert, subjected Jenkins to severe or pervasive sexual harassment during his employment.

87.     Defendants engaged in unlawful quid pro quo conduct by premising Jenkins' terms and conditions of employment on his participation in sexual acts with members of management and upper management in Human Resources.

88.     Defendants sought to engage Jenkins in sexual acts both on and off the worksite.

89.     Defendants' conduct was unwelcome.

90.     Defendants' conduct was objectively and subjectively severe or pervasive.

91.     Defendants' conduct materially altered Jenkins' terms and conditions of employment.

92.     Defendants suspended Jenkins for refusing to engage in sexual

13

conduct.

93.     Jenkins complained to the union and to Bobby Elrod, Director of Human Resources, about the sexual harassment.

94.     Defendants failed to investigate or remedy the unlawful conduct.

95.     Defendants terminated Jenkins' employment after he refused sexual advances from McDickinson and Birchfield and after he complained.

96.     Defendants' conduct proximately caused Jenkins to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

97.     Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

14

## COUNT II

### TITLE VII AND SECTION 1981
### RACE DISCRIMINATION AND HARASSMENT
### AGAINST KOCH FOODS, INC. AND KOCH FOODS OF ALABAMA, LLC

98.    Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

99.    Jenkins is African-American and a member of a protected class.

100.    Defendants, by and through Human Resources Manager McDickinson and Complex Human Resources Manager Birchfield and those acting in concert, targeted Jenkins because of his race and subjected him to adverse treatment.

101.    Defendants subjected Jenkins to adverse employment action, including suspension and termination.

102.    Jenkins suffered less preferential terms, conditions, and pay of employment than similarly-situated employees who were not African-American.

103.    Defendants subjected Jenkins to a hostile work environment on the basis of race.

104.    Defendants' conduct was objectively and subjectively severe or pervasive.

105.    Defendants' conduct materially altered Jenkins' terms and conditions

15

of employment.

106.    Jenkins complained to the union and to Bobby Elrod, Director of Human Resources, about the discrimination and harassment.

107.    Defendants failed to investigate or remedy the harassment.

108.    Defendants' conduct proximately caused Jenkins to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

109.    Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

**COUNT III**

**TITLE VII**
**SEX DISCRIMINATION AND HARASSMENT**
**AGAINST KOCH FOODS, INC. AND KOCH FOODS OF ALABAMA, LLC**

110.    Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

111.    Jenkins is male and a member of a protected class.

112.   Defendants, by and through Human Resources Manager McDickinson and Complex Human Resources Manager Birchfield and those acting in concert, targeted Jenkins based on sex and subjected him to adverse treatment.

113.   Defendants subjected Jenkins to adverse employment action, including suspension and termination.

114.   Jenkins suffered less preferential terms, conditions, and pay of employment than similarly-situated female employees.

115.   Defendants subjected Jenkins to a hostile work environment on the basis of sex.

116.   Defendants' conduct was objectively and subjectively severe or pervasive.

117.   Defendants' conduct materially altered Jenkins' terms and conditions of employment.

118.   Jenkins complained to the union and to Bobby Elrod, Director of Human Resources, about the discrimination and harassment.

119.   Defendants failed to investigate or remedy the conduct.

120.   Defendants' conduct proximately caused Jenkins to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment

opportunity, and other pecuniary and non-pecuniary losses.

121.   Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT IV

### TITLE VII AND SECTION 1981 RETALIATION AGAINST KOCH FOODS, INC. AND KOCH FOODS OF ALABAMA, LLC

122.   Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

123.   Jenkins complained about discrimination and harassment.

124.   Defendants subjected Jenkins to a retaliatory hostile work environment because of his protected activity.

125.   Defendants subjected Jenkins to adverse employment action that materially altered the terms and conditions of his employment, including suspension and termination, because of his protected activity.

126.   Defendants' unlawful acts were proximate to Jenkins' protected activity.

18

127. Defendants' conduct proximately caused Jenkins to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

128. Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT V

## INVASION OF PRIVACY
## AGAINST ALL DEFENDANTS

129. Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

130. This is a claim against all Defendants for the invasion of Jenkins' right to privacy based on the laws of the State of Alabama.

131. Defendant intruded into Jenkins' physical solitude and seclusion by subjecting Jenkins to egregious, severe or pervasive sexual harassment, including physical touching, and other discrimination, harassment, and retaliation that violated Jenkins' emotional sanctum.

132.   Defendants invaded Jenkins' personal and emotional sanctum by harassing and discriminating against Jenkins, making false allegations against him, and placing him in a false and unfavorable light.

133.   Defendants' conduct proximately caused Jenkins to suffer extreme emotional distress, embarrassment, humiliation, financial loss, loss of employment opportunity, and other pecuniary and non-pecuniary losses.

134.   Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT VI

## ASSAULT AND BATTERY
## AGAINST ALL DEFENDANTS

135.   Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

136.   Defendants subjected Jenkins to the threat of offensive and unwanted touching.

137.   Defendants subjected Jenkins to offensive and unwanted touching.

138.   Defendants' conduct offended and embarrassed Jenkins.

139.   Defendants McDickinson and Birchfield subjected Jenkins to such conduct acting in their roles as Human Resources Managers.

140.   Defendants Koch Foods and Koch-Ala ratified and permitted Defendant McDickinson's conduct.

141.   Defendants Koch Foods and Koch-Ala ratified and permitted Defendant Birchfield's conduct.

142.   Defendants Koch Foods and Koch-Ala are liable for McDickinson's and Birchfield's conduct.

143.   Defendants' conduct proximately caused Jenkins injury.

144.   Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT VII

### NEGLIGENT/WANTON HIRING, SUPERVISION, TRAINING, AND RETENTION AGAINST ALL DEFENDANTS

145. Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

146. This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision, and retention of Defendants' agents and employees.

147. Defendant had a duty to provide a reasonably safe, non-hostile, and non-discriminatory work environment to Jenkins and other similarly-situated employees.

148. Defendants negligently and wantonly failed to train and discipline those employees and agents who actively discriminated, harassed, retaliated, and conspired against Jenkins and failed to protect Jenkins from further injury.

149. Defendants failed to administer their own policies against discrimination, harassment, and retaliation and failed to regularly and clearly communicate and train their managers and employees on such policies.

150. Jenkins' working conditions created by Defendants' agents and

22

employees, including Birchfield, McDickinson, and Elrod, were adverse and hostile.

151.   Defendants' conduct caused Jenkins physical, emotional, and financial harm.

152.   As a proximate result of Defendants' unlawful conduct, Jenkins suffered different and adverse terms and conditions of employment from other employees, financial loss, loss of employment opportunity, emotional distress, and other pecuniary and non-pecuniary losses.

153.   Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

154.   Jenkins adopts and realleges paragraphs 1-84 as if fully set forth herein.

23

155. This is a claim against Defendant arising under the laws of the State of Alabama prohibiting the intentional infliction of emotional distress.

156. The conduct of Defendants, as described herein, consisted of intentional acts which were employed to inflict severe emotional distress upon Jenkins.

157. The egregious harassment, discrimination, and retaliation altered Jenkins' work environment, terms and conditions of his employment, and inflicted severe emotional distress.

158. Defendants' conduct is not condoned by society and should not go unpunished.

159. The conduct of Defendants was extreme, outrageous, and beyond the bounds of decency.

160. As a proximate result of Defendants' unlawful conduct, Jenkins suffered different and adverse terms and conditions of employment from other employees, financial loss, loss of employment opportunity, emotional distress, and other pecuniary and non-pecuniary losses.

161. Jenkins seeks declaratory and injunctive relief, reinstatement, an award of lost wages and benefits, back pay, front pay, compensatory and punitive

damages, damages for loss of career opportunity, emotional distress damages, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE,** Plaintiff respectfully requests this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from further engaging in discrimination, harassment, and retaliation on the basis of age;

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against age discrimination and harassment in the work place and against retaliation for engaging in protected activities;

C.      Order Defendant to make Plaintiff whole by providing appropriate front pay, back pay, with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, reinstatement, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including,

but not limited to, compensatory damages, punitive and liquidated damages;

     D.     Award the Plaintiff compensatory, punitive and liquidated damages;

     E.     Award the Plaintiff his costs and expenses herein, including reasonable attorney fees; and

     F.     Award such other and further relief which this Court deems necessary and proper.

## PLAINTIFF HEREBY DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

Alicia K. Haynes (ASB-8237-E23A)
Sonya C. Edwards (ASB-8848-S73E)
Attorneys for Plaintiff Irish Jenkins

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
        scedwards@haynes-haynes.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:**

Koch Foods of Alabama, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

Koch Foods, Inc.
c/o Joseph Grendys
Chief Executive Officer
Koch Foods
1300 West Higgins Road
Park Ridge, IL 60068


David Birchfield
614 River Birch Drive
Prattville, AL 36067

Melissa McDickinson
614 River Birch Drive
Prattville, AL 36067

27