# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **IRISH JENKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:17-cv-364-MHT-DAB** |
| | ) | |
| **KOCH FOODS, INC., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Irish Jenkins alleges that Defendants engaged in intentional unlawful employment practices and other acts of intentional discrimination; harassment; retaliation; assault and battery; invasion of privacy; negligent/wanton hiring, training, supervision and retention; and intentional infliction of emotional distress. This matter is before the court on the motion of Defendants Koch Foods, Inc. ("Koch") and Koch Foods of Alabama LLC ("Koch-Ala")(collectively, "Defendants") to dismiss Plaintiff's claims of pay discrimination, claims of race discrimination and racial harassment under Title VII and §1981, and of § 1981 retaliation. (Doc. 12). The motion is fully briefed and taken under submission.

## I.    JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On September 18, 2017, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 33). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   BACKGROUND AND STATEMENT OF FACTS[1]

Plaintiff is an African-American male who was employed by Defendants as an inventory clerk from 2013 until March 25, 2016, when Defendants terminated his employment. (Doc. 1 at ¶¶ 21-22). In October 2015, Defendant Melissa McDickinson, Human Resources Manager for Defendants, initiated a consensual sexual relationship with Plaintiff. (Doc. 1 at ¶¶ 23-29). McDickinson told Plaintiff that "as long as [Plaintiff] remained in a sexual relationship with her, he could do whatever he wanted at work and she would ensure that he was 'bulletproof' from

---

[1] These are the facts for purposes of recommending a ruling on the pending motions to dismiss; they may not be the actual facts and are not based upon evidence in the court's record. They are gleaned exclusively from the allegations in the Complaint.

any discipline." (Doc. 1 at ¶ 34).  McDickinson and Defendant David Birchfield, Complex Human Resources Manager for Defendants, discussed propositions for group sexual activities with Plaintiff, which Plaintiff refused and expressed that he believed the request was sexual harassment. (Doc. 1 at ¶¶ 46-49).

Beginning in November 2015, McDickinson repeatedly told Plaintiff that Birchfield wanted to watch Plaintiff and McDickinson have sex. (Doc. 1 at ¶¶ 52-54). Plaintiff refused the requests, and in December 2015, Birchfield suspended Plaintiff for three days for an alleged "points violation." (Doc. 1 at ¶¶ 55-56). Thereafter, Birchfield and McDickinson brought Plaintiff back to work "and drastically reduced his points history." (Doc. 1 at ¶ 57). McDickinson then instructed Plaintiff that "if he 'stuck with her' and consented to Birchfield's request to join them for sex, [Plaintiff] would be 'untouchable' in the workplace." (Doc. 1 at ¶ 58). Birchfield and McDickinson continued to pressure Plaintiff to engage in sex with them, and Plaintiff continued to refuse. (Doc. 1 at ¶¶ 60-66).

On March 21, 2016, Birchfield accused Plaintiff of taking excess break time and suspended him for four days, which Plaintiff alleges was retaliation for his refusals to submit to Birchfield and McDickinson's advances. (Doc. 1 at ¶ 67-68). Plaintiff contacted Bobby Elrod, Director of Human Resources for Defendants, and complained of discrimination, harassment, and retaliation, but Defendants failed to discipline Birchfield or McDickinson or investigate his complaints. (Doc. 1 at ¶¶ 71-

74). Defendants terminated Plaintiff's employment on March 25, 2016. (Doc. 1 at ¶ 79).

On June 17, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, racial discrimination, and retaliation. (Doc. 1-1). The EEOC issued Plaintiff a Notice of Rights on March 7, 2017. (Doc. 1-2 at 2). Plaintiff filed his Complaint in this Court on June 5, 2017, alleging eight counts:

**Count I** – Sexual Harassment against Defendants pursuant to Title VII. (Doc. 1 at ¶¶ 85-97).

**Count II** – Race Discrimination and Harassment against Defendants pursuant to § 1981 and Title VII. (Doc. 1 at ¶¶ 98-109).

**Count III** – Sex Discrimination and Harassment against Defendants pursuant to § 1981 and Title VII. (Doc. 1 at ¶¶ 110-21).

**Count IV** - Retaliation against Defendants pursuant to § 1981 and Title VII. (Doc. 1 at ¶¶ 122-28).

**Count V** – Invasion of Privacy against all Defendants. (Doc. 1 at ¶¶ 129-34).

**Count VI** – Assault and Battery against all Defendants. (Doc. 1 at ¶¶ 135-43).

**Count VII** – Negligent/Wanton Hiring, Supervision, Training, and Retention against all Defendants. (Doc. 1 at ¶¶ 145-53).

**Count VIII** – Intentional Infliction of Emotional Distress against all Defendants. (Doc. 1 at ¶¶ 154-61).

## III.   STANDARD OF REVIEW

4

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

### A. Pay Discrimination Claims

Defendants first argue that Plaintiff's "Charge and supporting declaration are devoid of any mention of discriminatory pay practices based upon either race or sex. (Doc. 1-1). In addition, [Plaintiff]'s Complaint provides no factual allegations about any employee who was purportedly paid more than him based upon race or sex. (Doc. 1 at ¶ 102)." (Doc. 12 at ¶ 7). The Eleventh Circuit has held:

> To state a prima facie case of intentional discrimination in compensation, a plaintiff must establish that (1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage. *See Miranda v. B&B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1528 (11th Cir.1992) (compensation discrimination by gender); *MacPherson v. Univ. of Montevallo,* 922 F.2d 766, 774 (11th Cir.1991) (compensation discrimination by age). The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in her job, she "shared the same type of tasks" as the comparators. *B&B Cash Grocery,* 975 F.2d at 1529.

*Cooper v. S. Co.*, 390 F.3d 695, 734–35 (11th Cir. 2004), *rev'd in part on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006).

Plaintiff argues in response that "Nowhere in [Defendants'] citation [of *Cooper*] does it state that a plaintiff must plead the elements cited by Defendants in this paragraph to sufficiently state a Title VII or Section 1981 pay claim." (Doc. 23 at 5). Plaintiff is technically correct that Defendants' pinpoint citation to "390 F.3d 695, 725 n.17" (Doc. 12 at ¶ 5) does not support the proposition that plaintiffs must establish the four factors argued by Defendants. However, *Cooper* does support that proposition at 390 F.3d 695, 734–35, and Plaintiff fails to provide any authority to

7

the contrary. Moreover, Plaintiff's Complaint and his EEOC Charge are both devoid of any factual allegation that similarly situated comparators outside Plaintiff's protected class received higher compensation or that he was qualified to receive a higher wage. On its face, the Complaint fails to state a *prima facie* case of discrimination as to compensation. Accordingly, to the extent that the Complaint states a claim for discrimination in compensation, Defendants' motion to dismiss is due to be granted.

### B. Disparate Treatment and Harassment Based on Race

Defendants argue that Plaintiff "has failed to state a claim for disparate treatment or hostile work environment based upon his race…" (Doc. 12 at ¶ 10). Defendants offer no authority or argument as to the sufficiency of Plaintiff's claim of hostile work environment. Accordingly, Defendants' motion is due to be denied as to that argument.

As to disparate treatment,

A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. *See, e.g., McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Specifically,

Defendants argue that

> [Plaintiff's] Complaint fails to provide factual allegations about disparate treatment based upon race. Jenkins identifies himself as an African-American male and his paramour, McDickinson, as Caucasian. (Doc. 1 at ¶¶ 21, 23). [Plaintiff] alleges McDickinson told him she was romantically interested in African-American men. However, those allegations are the entirety of the race-related allegations in [Plaintiff's] Complaint.

(Doc. 12 at ¶ 9). "The burden of establishing a prima facie case of disparate treatment

is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.

Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981). In Plaintiff's EEOC Charge and the

Complaint, he alleged that McDickinson sent her initial message to him via another

African-American employee named Steve Jackson, with whom she was also

engaged in sexual activity. (Doc. 1-1 at ¶ 4, 17; Doc. 1 at ¶ 24). Plaintiff further

alleged that another African-American coworker named Herman Bolware was

among the men McDickinson was having sex. (Doc. 1-1 at ¶ 17). Plaintiff alleged

that he wrote a letter to Elrod "complaint of Mr. Birchfield's harassment and

discrimination and of Ms. McDickinson's sexual behavior with employees (like

me)." (Doc. 1-1 at ¶ 16). Plaintiff alleged that "McDickinson told [Plaintiff] she had

a sexual preference for African-American men." (Doc. 1 at ¶ 28). Plaintiff's

employment was terminated soon after he refused repeated requests to have sex with

McDickinson while Birchfield watched. (Doc. 1 at ¶ 68). Viewing these facts in the

light most favorable to Plaintiff as the non-moving party, the Court may draw a reasonable inference that Plaintiff, as an African-American male, suffered an adverse employment action because he refused to engage in sex with McDickinson while Birchfield watched. Accordingly, Defendants' motion is due to be denied as to this issue.

### C. Section 1981 Retaliation Claim

Defendants next argue that "there is no factual allegation that [Plaintiff] complained about race discrimination or to demonstrate causation, [and] his § 1981 retaliation claims must be dismissed." (Doc. 1 at 10).

> Title VII and § 1981 prohibit employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited racial discrimination. *See* 42 U.S.C. § 2000e–3(a); *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 446, 128 S.Ct. 1951, 1954–55, 170 L.Ed.2d 864 (2008). In the employment context, the same substantive analysis applies to claims of discrimination under § 1981 and Title VII. *Turnes v. AmSouth Bank,* 36 F.3d 1057, 1060 (11th Cir.1994).

*McQueen v. Wells Fargo*, 573 F. App'x 836, 839 (11th Cir. 2014).

> A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001).

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "To meet the causal link requirement, the plaintiff 'merely has to prove that the protected activity and the

negative employment action are not completely unrelated.' *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993)." *Hawkins v. Potter*, 316 F. App'x 957, 961 (11th Cir. 2009).

Plaintiff alleged that "Birchfield falsely accused [Plaintiff] of 'stealing time by taking and excessive work break' and suspended him for four (f) days." (Doc. 1 at ¶ 67). Plaintiff alleged that the real reason he was suspended was because he refused the sexual propositions of Birchfield and McDickinson. (Doc. 1 at ¶ 68). Plaintiff further alleged that following his suspension, he "contacted Bobby Elrod, Director of Human Resources, and complained of discrimination, harassment, and retaliation." (Doc. 1 at ¶ 71). Defendants then terminated Plaintiff's employment. (Doc. 1 at ¶ 79).

Defendants appear to argue that Plaintiff failed "to allege the decision makers were aware of the protected conduct." (Doc. 12 at ¶ 12). Viewing the evidence in the light most favorable to Plaintiff, the decision makers in this case were Birchfield and McDickinson, the same people he accuses of harassment and discrimination. Moreover, to the extent Elrod could be considered the "decision maker," Plaintiff has sufficiently pleaded facts that would indicate that Elrod was sufficiently aware of Plaintiff's complaints. Defendants appear to draw a distinction whether Plaintiff's complaints to Elrod of "discrimination, harassment, and retaliation" involved the issue of race. (Doc. 12 at ¶ 13). However, on review of a motion to dismiss, the

evidence is sufficient to make a reasonable inference that Plaintiff's complaint of discrimination, harassment, and retaliation included racial, sexual, and retaliatory elements. On the facts as they are presented in the Charge and Complaint, Plaintiff sufficiently pleaded that he was subject to discrimination and harassment based on his race and sex, that he engaged in the protected activity of lodging a complaint with Elrod, and that his employment was terminated. Accordingly, Defendants' motion to dismiss as to this issue is due to be denied.

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is **RECOMMENDED** that Defendants' motion to dismiss the Complaint against them (Doc. 12) is due to be **GRANTED IN PART** to the extent that the Complaint states a claim for discrimination in compensation in Counts II and III. In all other respects, Defendants' motion to dismiss the Complaint against them is due to be **DENIED.**

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **January 10, 2018.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 27th day of December 2017.

_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

13